FILED
SEP 4 I 03 PM '09
U.S. ~~~~~~~ JUDGE
BY_____

GREGORY A. BROWER
United States Attorney
PATRICK WALSH
Assistant United States Attorney
333 Las Vegas Boulevard South
Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336
Fax (702) 388-6698

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Mag. No. 2:09-mj-00723-LRL |
| ) | |
| PLAINTIFF ) | **COMPLAINT** |
| ) | 21 U.S.C. §§ 846 & 841(a)(1), |
| vs ) | (b)(1)(A)(viii) - Conspiracy to |
| ) | Distribute a Controlled Substance |
| JOSE VIDAL PENA-CHAVEZ, ) | 21 U.S.C. § (a)(1), (b)(1)(B)(viii) - |
| ABEL VILLANUEVA-ALVAREZ, ) | Distribution of a Controlled Substance, |
| ISIDRO LOPEZ-SANTOYO, ) | Methamphetamine |
| JORGE TINOCO-TALFOLLA, ) | |
| ) | |
| ) | |
| DEFENDANTS ) | |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being duly sworn, deposes and states:

Complainant is a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Las Vegas District Office (LVDO) and has been so employed since September, 2005.

### COUNT I

(Conspiracy to Distribute a Controlled Substance)

Beginning at a date unknown and continuing to and including September 3, 2009, in the State and Federal District of Nevada, **Jose Vidal PENA-Chavez, Sergio Isidro LOPEZ-Santoyo,**

**Jorge TINOCO-Talfolla, and Abel VILLANUEVA-Alvarez**, the defendants, did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to distribute 500 grams and more, to wit: two thousand and two (2,002) grams of a mixture and substance containing Methamphetamine, a Schedule II controlled substance, and two hundred twenty three and four-tenths (223.4) grams and more of Cocaine, a Schedule II controlled substance, in violation of 21 United States Code 846 and 841 (A)(1),(b)(1)(A)(viii) and (b)(1)(C).

## COUNT II

(Distribution of a Controlled Substance, Methamphetamine)

That on or about July 23, 2009, in the State and Federal Judicial District of Nevada, **Jose Vidal PENA-Chavez, and Sergio Isidro LOPEZ-Santoyo** defendant herein, did knowingly and intentionally distribute approximately fifty seven and one-tenth (57.1) grams of a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(viii).

## COUNT III

(Distribution of a Controlled Substance, Methamphetamine)

That on or about August 27, 2009, in the State and Federal Judicial District of Nevada, **Jose Vidal PENA-Chavez, Sergio Isidro LOPEZ-Santoyo, Jorge TINOCO-Talfolla, and Abel VILLANUEVA-Alvarez** defendants herein, did knowingly and intentionally distribute approximately fifty nine and two-tenths (59.2) grams of a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(viii).

1. The following is based on my own investigation or was provided by other law enforcement officers.

2. On or about June 3, 2009, at approximately 5:58 pm, a Las Vegas Metropolitan Confidential Source (hereinafter referred to as CS) purchased approximately twenty eight and seven-tenths (28.7) ounces of methamphetamine from Jose Vidal PENA-Chavez in the Smith's parking lot located at the intersection of Stewart Avenue and Nellis Avenue, Las Vegas, Nevada. Task

Force Officer (TFO) Jordan Harrison was with the CS during this time. After purchasing said methamphetamine, the CS transferred custody of the methamphetamine to TFO Jordan Harrison. TFO Harrison tested the methamphetamine using an ODV brand test kit which confirmed the presence of methamphetamine. TFO Harrison is trained in how to conduct this test.

3. On or about June 18, 2009, at approximately 7:33 pm, a Las Vegas Metropolitan Confidential Source (hereinafter referred to as CS) purchased approximately fifty nine and two-tenths (59.2) grams of methamphetamine from Jose Vidal PENA-Chavez in the parking lot of 5225 E. Stewart, Las Vegas, Nevada. TFO Jordan Harrison was with the CS during this time. After purchasing said methamphetamine, the CS transferred custody of the methamphetamine to TFO Jordan Harrison. TFO Harrison tested the methamphetamine using an ODV brand test kit which confirmed the presence of methamphetamine. TFO Harrison is trained in how to conduct this test.

4. On or about On July 23, 2009, at approximately 10:10 am, surveillance was established at 4600 Supreme Court, Las Vegas, Nevada. In the driveway of the residence, TFO King observed a white Ford minivan bearing Nevada registration 560-VZS.

5. At approximately 11:28 am, in the presence of TFO King the CS placed a telephone call to PENA using telephone number 702-418-6901. During the telephone call, the CS arranged to purchase two ounces of methamphetamine from PENA.

6. At approximately 12:40 pm, in the presence of TFO Harrison, the CS received a telephone call from PENA who stated that he is in the area and is attempting to locate the exact location. PENA further informed the CS that he (PENA) would be arriving in a white Tahoe.

7. At approximately 12:51 pm, TFO's Vincent and Herring observe a white Chevrolet Tahoe bearing Nevada registration 601-VHG arrive in the area of the Prince location. The Chevrolet parked directly in front of TFO Harrison's undercover vehicle.

8. At approximately 12:51 pm, TFO Harrison and SA Fazio observe PENA and Yamal MAZLUM-Garcia exit the Chevrolet and meet with the CS in front of the residence. All parties then enter the residence.

9. At approximately 1:00 pm, TFO Harrison observed PENA walk to the street and look around as if waiting for someone while talking on his telephone.

10. At approximately 1:02 pm, TFO Harrison and SA Fazio observed a red Saturn SUV bearing Nevada registration 405-VTD arrive and park near the Chevrolet and TFO Harrison's vehicle. SA Fazio observed Sergio Isidro LOPEZ-Santoyo, the driver of the Saturn, meet with the CS, PENA and MAZLUM in front of the residence.

11. While standing together, the CS attempted to hand the $2,400 Official Advanced Funds (OAF) to PENA. PENA rebuked the currency but indicated to the CS to give the OAF to MAZLUM. Once MAZLUM was given the OAF, LOPEZ handed the CS, approximately fifty seven and one-tenth (57.1) grams of methamphetamine.

12. At approximately 1:14, TFO Herring observed PENA, MAZLUM and LOPEZ return to their respective vehicles and depart the area.

13. Following the purchase of methamphetamine, the CS transferred custody of said methamphetamine to TFO Harrison. TFO Harrison subsequently transferred custody of said methamphetamine to TFO King. TFO King tested the methamphetamine using an ODV brand test kit which confirmed the presence of methamphetamine. TFO King is trained in how to conduct this test.

14. On or about August 27, 2009, at approximately 1:50 pm, surveillance was established at 4600 Supreme Court and 2183 North Christy Lane, both in Las Vegas, Nevada. TFO Plunkett observed a red Saturn Vue, bearing Nevada registration 405-VTN in the driveway of the Christy residence. SA Poortinga observed a white Chevrolet Tahoe bearing Nevada registration 847-WCM in the driveway of the Supreme residence. TFO King conducted a Nevada Department of Motor Vehicles records check and learned this vehicle was registered to Jose Vidal PENA-Chavez on August 10, 2009. The check further indicated the Chevrolet was previously registered under Nevada registration 601-VHG. This indicated the Chevrolet was the same vehicle used to during the purchase of methamphetamine on July 23, 2009.

. . .

15. At approximately 2:00 pm, in the presence of TFO King the CS placed a telephone call to PENA using telephone number 702-418-6901. During the telephone call, the CS arranged the purchase of two ounces of methamphetamine from PENA. PENA stated that he would meet the CS in approximately 20 minutes at 10 Prince Lane, Las Vegas, Nevada.

16. At approximately 2:25 pm, PENA called the CS and stated that he (PENA) would arrive in approximately 10 minutes.

17. At approximately 2:30 pm, SA Poortinga observed PENA, Jorge TINOCO-Talfolla, and Abel VILLANUEVA-Alvarez exit the Supreme residence and enter the Chevrolet. The Chevrolet then drove away from the residence. Surveillance was suspended once the Chevrolet exited the neighborhood.

18. At approximately 2:37 pm, TFO Plunkett observed the Chevrolet arrive at the Christy residence and park in the front yard. TFO Plunkett observed PENA, TINOCO, and VILLANUEVA exit the Chevrolet and enter the residence.

19. At approximately 2:42 pm, PENA called the CS and stated that he (PENA) would arrive in any minute.

20. At approximately 2:52 pm, TFO Herring observed the Chevrolet depart from the Christy residence. Shortly after the Chevrolet departed, TFO Herring observed the Saturn depart as well. Surveillance is maintained on both vehicles.

21. At approximately 2:55 pm, PENA called the CS and stated that he (PENA) would arrive soon.

22. At approximately 3:01 pm, SA Fazio and SA Poortinga observed the Chevrolet arrive in front of the Prince residence. TFO Plunkett maintained surveillance on the Chevrolet from the Christy residence to the Prince residence.

23. At approximately 3:03 pm, SA Fazio and SA Poortinga observed the CS enter the rear passenger door of the Chevrolet. While inside the Chevrolet, PENA informed the CS that he . . .

(PENA) was capable of selling "China White." The CS took this statement as meaning that PENA was able to sell cocaine.

24. At approximately 3:05 pm, SA Fazio and SA Poortinga observed the Saturn arrive at the Prince residence. The driver, Sergio Isidro LOPEZ-Santoyo, exited the Saturn, met with the front seat passenger for a short time, and then entered the rear passenger door the Chevrolet. TFO Herring maintained surveillance on the Saturn as it drove directly from the Christy residence to the Prince residence.

25. The CS was handed fifty seven and two-tenths (57.2) grams of methamphetamine by LOPEZ for which the CS handed TINOCO $2,400 of Official Advanced Funds. The CS observed TINOCO immediately hand the funds to PENA who was seated in the driver's seat.

26. At approximately 3:07 pm, SA Fazio and SA Poortinga observed the CS exit the Chevrolet. LOPEZ then exited the Chevrolet and returned to the driver's seat of the Saturn. The Chevrolet then drove north from the Prince residence followed shortly thereafter by the Saturn.

27. Following the purchase of the methamphetamine, the CS transferred custody of said methamphetamine to TFO King. TFO King tested the methamphetamine using an ODV brand test kit which confirmed the presence of methamphetamine. TFO King is trained in how to conduct this test.

28. On September 3, 2009, the DEA Las Vegas District Office executed State of Nevada search warrants at 4600 Supreme Court, Las Vegas, Nevada and 2183 Christy Lane, Las Vegas, Nevada.

29. At the time of the execution of the warrant for 4600 Supreme Court, agents/officers located Jose Vidal PENA-Chavez in the master bedroom. During a search of this room, agents/officers located a Springfield Armory Model XD45 semi-automatic handgun in the master bedroom. Also in this bedroom, agents/officers located the cellular telephone using 702-418-6901, which the CS used to purchase methamphetamine on July 23, 2009 and August 27, 2009. In the northeast child's bedroom, agents/officers located a Fabrinor Vitoria Llama .45 caliber, with serial

number 71-04-05377-0060051. This bedroom was maintained for Abel VILLANUEVA-Alvarez's children, who were located in VILLANUEVA's northeast bedroom.

30. At the time of the execution of the warrant for 2183 Christy Lane, agents/officers located Sergio Isidro LOPEZ-Santoyo in the master bedroom. During a search of the master bedroom, agents/officers located 7.1 grams of methamphetamine. During a search of the front bedroom, which was being used for storage, agents/officers located a speaker box containing one thousand nine hundred forty eight and nine-tenths (1,948.9) grams of methamphetamine and two hundred twenty three and four-tenths (223.4) grams of cocaine. Inside the closet of the same front bedroom, agents/officers located a hidden compartment containing digital scales and forty six and six-tenths (46.6) grams of cocaine. TFO Harrison tested the narcotics using an ODV brand test kit which confirmed the presence of methamphetamine and cocaine for the respective narcotics. TFO Harrison is trained in how to conduct this test.

31. During the post-arrest interview of Jose Vidal PENA-Chavez, PENA stated that he has been trafficking methamphetamine for approximately a year to support his family. During this year, PENA has been paying his (PENA's) source of supply approximately $18,000 every two weeks for methamphetamine. In reference to the residence at 2183 Christy Lane, PENA stated that he pays the bills and rent for the residence and that he knew there was methamphetamine and cocaine inside. PENA further stated that he was aware of narcotics being stored in the speaker box and hidden compartment in the closet of the front bedroom. PENA admitted he would receive telephone calls from customers and would then contact Sergio Isidro LOPEZ-Santoyo who would then fill the order with the respective customer.

32. During the post-arrest interview of Jorge TINOCO-Talfolla, TINOCO stated that he travels with PENA approximately twenty times a week for the past two months while PENA was conducting narcotics transactions. TINOCO stated that he does this for free rent. Furthermore, TINOCO reiterated that PENA would receive telephone orders from narcotics customers and would then contact LOPEZ on where to meet the customers with the appropriate amount of narcotics.

TINOCO stated that only one time he (TINOCO) touched monetary proceeds from narcotics sales and that was when a customer dropped off $800 to him (TINOCO) at the 4600 Supreme residence.

33. During the post arrest interview of Abel VILLANUEVA-Alvarez, VILLANUEVA stated that he owns the white Ford van and purple Ford pickup that were located at the 4600 Supreme residence. Originally VILLANUEVA stated that he previously sold narcotics for money but had stopped, but recanted and stated that he continues to sell for money because he installs car stereos only once a week. In reference to the semi-automatic pistol located in his children's room, VILLANUEVA stated that he received the pistol from his source of supply known only as METRACA LNU. VILLANUEVA stated that METRARCA told VILLANUEVA to hold the pistol and that VILLANUEVA originally placed the pistol in the hallway linen closet but moved the pistol to the children's room for the safety of the children.

34. During the post-arrest interview of Sergio Isidro LOPEZ-Santoyo, LOPEZ stated that he moved into the Christy Lane residence approximately one and a half months ago to house-sit the property. During that time, PENA convinced LOPEZ to begin delivering narcotics for him (LOPEZ) approximately five to six times a week for money and free rent. LOPEZ stated that he (LOPEZ) would retrieve the narcotics from behind the scales in the hidden compartment in the front bedroom of the Christy Lane residence and then would deliver the narcotics based on LOPEZ's orders.

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

35. During their post-arrest interviews, all four individuals admitted they entered the United States unlawfully and were Mexican citizen who were illegally present in the United States.

_____
BRENT POORTINGA, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
This 4th day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE